**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| WILLIAM C. VALENTINE, | : | Case No. 3:10-cv-470 |
| Plaintiff, | : | District Judge Walter H. Rice |
| | | Magistrate Judge Michael J. Newman |
| vs. | : | |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF | | |
| SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY
FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND
REVERSED; AND (2) THE CASE BE REMANDED FOR AN AWARD OF IMMEDIATE
SUPPLEMENTAL SECURITY INCOME BENEFITS WITH AN ONSET DATE OF
DECEMBER 17, 2005**

This is a Social Security appeal brought pursuant to 42 U.S.C. §§ 405(g),1383(c)(3). At

issue is whether the Administrative Law Judge ("ALJ") erred in finding that Plaintiff William C.

Valentine ("Plaintiff") was "not disabled" and therefore unentitled to Supplemental Security Income

("SSI") and/or Disability Insurance Benefits ("DIB"). *See* Administrative Transcript ("Tr.") 22.

The case is before the Court upon Plaintiff's Statement of Errors (doc. 6), the

Commissioner's Memorandum in Opposition (doc. 8), the administrative record, and the record as

a whole.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.

# I. BACKGROUND

## A.    Procedural History

Plaintiff filed SSI and DIB applications on October 28, 2003, asserting he has been under a "disability" since April 17, 2001.  Tr. 373-75, 792-93.[2]  Plaintiff claims he is disabled due to "severe arthritis, deterioration in low back [and] depression."  Tr. 395.

Following initial administrative denials of his application, Plaintiff received a hearing before ALJ Daniel Shell ("ALJ Shell") on October 26, 2006.  Tr. 830-54.  At the hearing, ALJ Shell heard testimony from Plaintiff and a vocational expert.  *Id.*  On May 3, 2007, ALJ Shell issued a written decision, concluding that Plaintiff was not disabled.  Tr. 314-30.

The Appeals Council granted review.  *See* tr. 331-35.  In a written decision, the Appeals Council determined that ALJ Shell committed several errors.  *Id.*  Specifically, it found that ALJ Shell's residual functional capacity ("RFC") findings were inconsistent with the record as a whole and did not comply with the relevant Social Security Regulations.  Tr. 333.  In addition, the Appeals Council determined that ALJ Shell's decision did not adequately address the opinion of Plaintiff's treating physician, Dr. Skrobot, that Plaintiff could no longer work.  *Id.*  Further, the Appeals Council held that ALJ Shell did not adequately evaluate Plaintiff's subjective complaints and their impact on Plaintiff's RFC.  Tr. 334.  Finally, the Appeals Council concluded there was "insufficient evidence to establish whether any of the claimant's prior work qualifies as past relevant work" and therefore ALJ Shell erred in finding that claimant had past relevant work.  Tr. 334.  Accordingly,

---

[2]Plaintiff previously applied for DIB and SSI on April 20, 2001, alleging a disability onset date of April 17, 2001.  Tr. 57-59.  On September 10, 2002, ALJ James Knapp issued a written decision, denying Plaintiff 's benefits applications.  Tr. 300-09.  The Appeals Council denied review, and Plaintiff did not challenge that finding on appeal.  Tr. 310-11.  As Plaintiff correctly notes, under principles of *res judicata*, the earliest he could be found disabled is September 11, 2002, the day after the previous non-disability decision.  Doc. 6 at PAGEID 61 n. 1. *See Willis v. Sec'y of Health & Human Servs.*, 802 F.2d 870, 871 n.2 (6th Cir. 1986).

the Appeals Council remanded Plaintiff's SSI and DIB claims, instructing the ALJ to "take appropriate action to resolve the [cited] issues." *Id.*

On remand, a hearing was held before ALJ Ameila Lombardo ("ALJ Lombardo") on October 28, 2009. Tr. 855-88. At the hearing, Plaintiff, vocational expert Suman Srinivasan, and Malcolm Brahams, M.D. all testified. *Id.* On November 25, 2009, ALJ Lombardo issued a written decision, finding Plaintiff "not disabled" and therefore denying her SSI and DIB claims. Tr. 16-31.

Specifically, the ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2005 (Exhibit B4D).

2. The claimant has not engaged in substantial gainful activity since April 17, 2001, the alleged disability onset date (20 CFR 404.1571 *et seq.*, and 416. 971, *et seq.*).

3. The claimant has the following severe impairment: degenerative disc disease of the lumbar spine (20 CFR 404.1520(c) and 416.920 (c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416. 967(b) subject to the following limitations: only occasional stooping or crouching; the opportunity to alternate between sitting and standing every 30 minutes.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 17, 1955. From the alleged disability onset date until he attained age 50 in December 2005, the claimant was classified as a "younger individual" for Social Security purposes. Since attaining age 50 the claimant is classified as an individual who is "closely approaching advanced age" (50-54 years old) for Social Security purposes (20 CFR 404.1563 and 416.963).

8. The claimant has a high-school education (20 CFR 404.1564 and 416.964).

9. The claimant does not have "transferable" work skills within the meaning of the Social Security Act (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been disabled, as defined in the Social Security Act, from April 17, 2001, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 16-31.

The Appeals Council denied Plaintiff's request to review ALJ's Lombardo's decision. Tr. 8-10. Plaintiff then filed this appeal, arguing that the ALJ erred in: (1) rejecting his treating physician's opinion; and (2) assessing his credibility. *See* doc. 6.

## B. Plaintiff's Vocational Profile and Testimony

Plaintiff was 45 years old on his alleged disability onset date, and thus considered a "younger individual." *See* 20 C.F.R. §§ 404.1563, 416.963. At the time of ALJ Lombardo's decision, Plaintiff was 53 years old, and thus classified as "closely approaching advanced age" for Social Security purposes. *See id.* Plaintiff has a high school education, and no past relevant work. Tr. 29-30.

Plaintiff's has experienced low back pain since April 2001, when he fell down eight to ten steps at home. Tr. 444-48, 861. The day after his fall, Plaintiff visited the emergency room, where his lumbar spine was X-rayed. The X-rays showed multi-level bone spurs and mild-to-moderate disc height degeneration at the L-3 and L-5 levels, but no fractures. Tr. 447-48. A CT scan of Plaintiff's lumbar spine on April 20, 2001 showed "severe degenerative changes of the L5-SI disc

with vacuum phenomena and compression of the right nerve root," as well as "homogenous bulging of the L4-5 and L3-4 discs without herniation."  Tr. 444-45.

At the administrative hearing, Plaintiff testified that he takes medication -- Vicodin, Flexeril, and Naproxen -- to manage his back pain, which cause him to feel drowsy and dizzy.  Tr. 873.  Due to the medication's side effects, Plaintiff estimated that he sleeps sixteen hours throughout the day.  Tr. 877.  Plaintiff testified that he tried physical therapy, but stopped because it was increasing his pain.  Tr. 874.  He has not had any surgeries; nor does he plan to do so.  Tr. 873.  He refuses to take any injections due to his fear of needles.  Tr. 873.  Plaintiff stated that he is depressed, even though he is not taking any medications to treat his depression.  Tr. 869.

Plaintiff testified that his movement is restricted due to his back pain, estimating that he can only walk for one block without taking a break, stand for thirty minutes at a time, and can lift no more than five pounds.  Tr. 876.  Plaintiff stated that when the medications wear off, his back pain interferes with his sleep.  *See* tr. 878-80.  As for his daily activities, Plaintiff reported that he does not do much cleaning because his son does it for him, and only cooks in the microwave oven.  Tr. 871.  Likewise, Plaintiff stated that his son or neighbors usually go to the grocery store for him, but sometimes he will accompany them.  Tr. 872.  Plaintiff estimated that he leaves his apartment two times a week, and when he does so, he travels by bus.  Tr. 874.

## II.  APPLICABLE LAW

### A.    Substantial Evidence Standard

The Court's inquiry on appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria.  42 U.S.C. §§ 405(g), 1383(c)(3); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir.

2007).  In performing this review, the Court must consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled.  *Id.*

The second inquiry -- reviewing the correctness of the ALJ's legal analysis --  may result in reversal even if the ALJ's decision is supported by substantial evidence in the record.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).  Thus, "[e]ven if supported by substantial evidence . . . a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial  right." *Bowen,* 478 F.3d at 746.

**B.**       **"Disability" Defined**

To be eligible for DIB or SSI, a claimant must be under a "disability" as defined by the Social Security Act.  42 U.S.C. §§ 423 (a) & (d), 1382c(a).  The definition of the term "disability" is the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *Id.*  A DIB and SSI claimant bears the ultimate burden of establishing that he

or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can he or she perform other work available in the national economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

### III. ANALYSIS

As a preliminary note, Plaintiff's pertinent medical findings and opinions have been adequately summarized in the parties' briefs, *see* doc. 6, at PAGEID 38-45; doc. 8, at PAGEID 61-67, and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

Plaintiff argues that ALJ Lombardo erred in two respects. First, he contends ALJ Lombardo ignored treater Skrobot's opinion regarding the severity of Plaintiff's impairments. *See* doc. 6 at

PAGEID 47-51.  Second, he asserts ALJ Lombardo's credibility analysis was erroneous.  *See id.* at PAGEID 52-54.

### A.  The ALJ Erred in Rejecting Plaintiff's Treating Physician's Opinion

Plaintiff contends first that ALJ Lombardo erroneously discredited treater Skrobot's opinion that Plaintiff is unable to work, in violation of the treating physician rule.  Plaintiff asserts that, contrary to ALJ Lombardo's findings, Dr. Skrobot's opinion is supported by objective medical evidence and consistent with the record as a whole.  For the foregoing reasons, the Court agrees that ALJ Lombardo erred in not deferring to Dr. Skrobot's opinion, and the ALJ's decision should therefore be reversed.

### 1.  Treating Physician Rule

The treating physician rule "requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because:

> 'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.'"

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)).  Thus, an ALJ must give controlling weight to a treating source if he or she finds the opinion well-supported by medically acceptable data and not inconsistent with other substantial evidence in the record.  *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to 'always give good reasons in [the] notice of determination or decision for the

weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406 (citing 20 C.F.R. § 404.1527(d)(2)). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 406-07 (citing SSR 96-2p, 1996 SSR LEXIS 9, at *12).

### 2. Dr. Skrobot's Opinion

At the time of ALJ Lombardo's decision, Dr. Skrobot had been Plaintiff's primary care physician for over six years. *See* tr. 1573. During that time, Dr. Skrobot repeatedly documented that Plaintiff was unable to work on a sustained basis due to his degenerative disc disease and associated pain. Tr. 603, 622, 630, 710, 760, 790.

As Plaintiff's primary care physician, Dr. Skrobot evaluated Plaintiff's physical capabilities, in which he consistently determined that Plaintiff did not have the RFC to be employed. In a February 21, 2005 Basic Medical Form, for example, Dr. Skrobot determined that Plaintiff could stand, walk, or sit for up to one hour at a time; could lift or carry up to five pounds; and that his ability to push, pull, or bend was extremely limited. Tr. 634-35. In Basic Medical Forms completed in August 2006, April 2007, and August 2009, Dr. Skrobot determined that Plaintiff's condition had worsened, and he could stand, walk or sit for just thirty minutes at a time; and could only carry up to five pounds. Tr. 706-08, 711-12, 761-62.

Notably, Dr. Skrobot completed a Physical Capacities Evaluation of Plaintiff on June 1, 2006. Tr. 653-54. He then reported that Plaintiff could stand/walk or sit for up to half an hour at a time; bend, squat and crawl just occasionally; and never climb. Tr. 653. Therefore, Dr. Skrobot opined that Plaintiff was unable to do sedentary or light work on a sustained basis. Tr. 654.

Additionally, Dr. Skrobot completed a Supplemental Questionnaire at the Social Security Administration's request, finding that Plaintiff was also mentally impaired due to the side effects of his medication and depression.  Tr. 649-52.

### 3.    ALJ Lombardo's Decision

While ALJ Lombardo acknowledged Dr. Skrobot's opinion -- that Plaintiff is unemployable -- she declined to give it controlling weight, stating it was "entirely speculative" and "based on uncritical acceptance of the claimant's subjective complaints and allegations." *See* tr. 22.

First, ALJ Lombardo discredited Dr. Skrobot's opinion on the grounds that he has only treated Plaintiff with "conservative measures such as prescribed exercise and medication." *Id.* However, ALJ Lombardo did not cite to any medical evidence suggesting that surgery would improve Plaintiff's condition. *See id.*  Indeed, Dr. Skrobot discussed other treatments with Plaintiff. When he initially examined Plaintiff in April 2003, Plaintiff informed Dr. Skrobot that he did not undergo physical therapy because it increased his back pain.  Tr. 611.   He also advised Dr. Skrobot that had tried TENS unit therapy, but it caused him to have muscle spasms.  *Id.*

Accordingly, Dr. Skrobot referred Plaintiff to Townsend Smith, M.D., a pain management physician, to consider additional treatment.  Tr. 612.   Recognizing Plaintiff "does not have apparently a surgically treatable disease process," Dr. Townsend concluded that he  meets "the stated medical board criteria for someone who can be managed with chronic pain medications based on his structural pathology by MRI." Tr. 491.  Thus, the Court finds that ALJ Lombardo's decision -- to discredit Dr. Skrobot's opinion for only trying "conservative measures" -- is not supported by substantial evidence.

Second, ALJ Lombardo undermines Dr. Skrobot's opinion by claiming it is not supported by clinical test results and examinations. To the contrary, Dr. Skrobot's opinion regarding Plaintiff's pain is supported by ample objective medical findings. Following his fall in April 2001, for example, a CT scan of Plaintiff's lumbar spine revealed degenerative disc disease. Tr. 444-45. In November 2001, a lower extremity EMG was positive for "left L5 nerve root irritation confined to posterior rani." Tr. 555. Further, on June 20, 2003, a MRI of Plaintiff's lumbar spine revealed some disc bulging and mild narrowing at the L3-4 levels; mild-to-moderate disc bulging and narrowing at the L4-5 levels; and end plate spurring and narrowing at the L5-S1 level. Tr. 486.

Likewise, Dr. Skrobot's opinion is consistent with other examining sources' clinical findings. For example, pain management physician Dr. Smith, on December 16, 2003, found that Plaintiff had positive straight-leg-raises. Tr. 493. In July 2004, a physical therapist reported that Plaintiff had a reduced range of motion in the trunk area, tightness in the hips, and tenderness in the lower back. Tr. 616-17. Similarly, in February 2005, a different physical therapist reported that Plaintiff had a positive straight-leg-raise test, reduced range of motion in the trunk area, and tightness in the back and hips. Tr. 620-21. Accordingly, ALJ Lombardo's finding -- that the clinical evidence is inconsistent with Dr. Skrobot's medical opinion -- is not supported by substantial evidence.

Third, ALJ Lombardo discredited Dr. Skroboto's opinion on the grounds that it was inconsistent with the testifying medical expert, Dr. Brahms. Tr. 22.[3] Dr. Brahams never examined Plaintiff, but merely reviewed his medical records. Tr. 860. Relying primarily on the RFC findings of the state consulting physicians, Dr. Brahms testified that Plaintiff is capable of performing

---

[3]Notably, at the time of the hearing, Dr. Brahms was eighty-nine years old, and had not practiced medicine for at least five years. Tr. 859-60.

medium work. Tr. 861. When questioned about Dr. Skrobot's conflicting findings, Dr. Brahms claimed Dr. Skrobot's opinion was unsubstantiated by the record. For instance, Dr. Brahms summarily disregarded the CT scan indicating that Plaintiff's L4-5 central canal is moderately stenotic, stating it has "no significance whatsoever." Tr. 862. He also disregarded that Plaintiff's CT scan revealed he had "vacuum phenomenon"[4] and "compression of a nerve root. Tr. 862-63. Although he acknowledged that an EMG test will likely yield different results at different times, Dr. Brahms still refused to afford any significance to Plaintiff's 2001 EMG showing a left L5 nerve root irritation. Tr. 863-64.

Indeed, some of Dr. Brahms's testimony supports Dr. Skrobot's disability finding. He recognized that degenerative disc disease only gets worse over time. Tr. 865. He also noted that given varying pain thresholds, degenerative disc disease can cause some individuals more pain than others. Tr. 865-66. Moreover, Dr. Brahams acknowledged that Vicodin -- such as that prescribed to Plaintiff -- is typically prescribed to treat moderate-to-severe pain. Tr. 867.

Nonetheless, Dr. Brahms concluded that Dr. Skrobot's opinion was not entitled to any weight. Instead, he agreed with the state consulting physician, Dr. Koppenhoefer, who concluded that Plaintiff is capable of performing medium work. *See* tr. 861. Having carefully reviewed Dr. Brahms's testimony, the Court finds that ALJ Lombardo erroneously relied on that testimony over Dr. Skrobot's repeated, well-documented finding that Plaintiff was disabled. *See Sherrill v. Sec'y of Health & Human Servs.*, 757 F.2d 803, 805 (6th Cir. 1985) (stating that a non-examining physician's testimony is entitled to less weight than the opinion of an examining physician).

---

[4]Dr. Brahms described vacuum phenomenon as a "cyst-like" finding on a CT scan. Tr. 863.

Accordingly, ALJ Lombardo's decision -- to defer to Dr. Brahms' testimony -- is not supported by substantial evidence.

Fourth, ALJ Lombardo undermined Dr. Skrobot's opinion on the ground that it was contrary to that of Dr. Koppenhoefer, who examined Plaintiff at the Bureau of Disability Determination's request. Tr. 23. Dr. Koppenhoefer noted that Plaintiff had discomfort in the lumbar region. Tr. 656. However, he determined that Plaintiff had a full range of motion, normal flexibility, no sensory or reflex impairments, normal muscle strength, and negative straight-leg-raising results. *Id.* ALJ Lombardo erred by giving more weight to one-time examining, consulting physician, Dr. Koppenhoefer, than to Plaintiff's treater. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) ("It is well settled that opinions of treating physicians should be given greater weight than those held by physicians whom the Secretary hired and who only examined the claimant once."). Thus, ALJ Lombardo's decision -- to give more weight to Dr. Koppenhoefer than to Dr. Skrobot -- is not supported by substantial evidence.

In the end, ALJ Lombardo found that Dr. Skrobot's disability findings are "inconsistent with the weight of the evidence of record and are less than credible." Tr. 24. Nonetheless, she gave Plaintiff "the maximum benefit of doubt," and agreed that Plaintiff had a severe impairment of degenerative disc disease. *Id.* Even so, ALJ Lombardo concluded that such an impairment did not render Plaintiff disabled, tr. 23, finding he has the RFC to perform light work as defined in the Social Security Regulations subject to the following limitations: "only occasional stooping or crouching; the opportunity to alternate between sitting and standing every 30 minutes." Tr. 26. In so holding, ALJ Lombardo improperly disregarded Dr. Skrobot's opinion regarding the severity and

13

effects of Plaintiff's condition, and ignored Dr. Skrobot's assessment regarding the amount of weight Plaintiff's combined impairments.

### 4. Medical Opinion Factors

Even if not entitled to controlling weight, ALJ Lombardo should have still applied the relevant factors in determining how much weight to afford Dr. Skrobot's opinion. It is well-established that when a treating source's opinion is not accorded controlling weight, the ALJ must apply certain factors: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Bowen*, 478 F.3d at 747 (citing 20 C.F.R. § 404.1527(d)(2)). "[T]here remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitle to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (citation omitted).

Here, ALJ Lombardo listed these factors in rejecting Dr. Skrobot's opinion, but she did not apply them. The ALJ failed to acknowledge that Dr. Skrobot treated Plaintiff consistently since April 2003, seeing him anywhere from once a month to once every three months. *See generally* tr. 604-12, 623-32, 636-47, 764-89. During those visits, Dr. Skrobot repeatedly documented Plaintiff's complaints of low back pain and continued to prescribe Plaintiff's pain medications, including one to two Vicodin every six hours. *See id.* Likewise, Dr. Skrobot repeatedly opined that Plaintiff was unable to perform substantial gainful activity on a sustained basis. *See* tr. 603, 622, 630, 710, 712, 762, 790. Moreover, Dr. Skrobot's opinion was consistent with the record as a whole, including objective medical evidence, such as an MRI, a CT scan, and an EMG, and other sources' opinions,

such as Dr. Smith and the physical therapists. Therefore, applying these factors, ALJ Lombardo should have deferred to Dr. Skrobot's opinion.

Opinions of one-time examining physicians and record-reviewing physicians, and medical experts who testify during administrative hearings, are also weighed under the same factors as the treating physician. *See* 20 C.F.R. §§ 404.1527(d), (f). In the present case, ALJ Lombardo did not apply these factors in evaluating how much weight to give the state consulting physicians. *See* tr. 20-29. Notably, the ALJ failed to consider that the opinions of Dr. Brahms and Dr. Koppenhoefer differed significantly from the objective medical evidence and clinical findings of Dr. Skrobot, Dr. Smith, and the physical therapists. For instance, Dr. Koppenhoefer's RFC findings were drastically different from Dr. Skrobot's, finding Plaintiff could lift up to fifty pounds occasionally and twenty-five pounds frequently; and his condition did not affect his ability to stand, walk, sit in any way. Tr. 662-63. Yet, ALJ Lombardo does not address this important distinction.

Likewise, in affording more weight to the consulting physicians, ALJ Lombardo did not take into account the extremely limited nature of their treatment relationship with Plaintiff: Dr. Brahms never actually examined Plaintiff, tr. 860; and Dr. Koppenhoefer only reviewed Plaintiff's medical records and physically examined Plaintiff once. *See* tr. 655-57. Further, ALJ Lombardo did not mention that Dr. Brahms had not practiced medicine for five years, and though he was a orthopedic surgeon, his specialty was foot and ankle. Tr. 859-60.

In sum, even if Dr. Skrobot's opinion was not entitled to controlling weight, ALJ Lombardo erred in not applying the relevant factors in determining how much weight to afford his opinion and the other medical sources' opinions.

### 5.    ALJ Lombardo's Error

In finding that Plaintiff had the RFC to perform a limited range of light work, ALJ Lombardo did not fully credit Dr. Skrobot's RFC assessment. ALJ Lombardo's RFC finding failed to take into account Dr. Skrobot's medical opinion regarding the severity of Plaintiff's condition and the resulting functional limitations on his ability to work. While emphasizing she was "giving [Plaintiff] the maximum benefit of doubt," ALJ Lombardo reluctantly determined that Plaintiff suffered from degenerative disc disease. Tr. 24. However, she still dismissed Dr. Skrobot's opinion regarding the severity of Plaintiff's symptoms and, instead, accepted the opinions of the state consulting physician and non-examining physician. Additionally, ALJ Lombardo discredited Dr. Skrobot's opinion that Plaintiff could only lift ten pounds occasionally and never more than ten pounds. *See* tr. 653. Therefore, ALJ Lombardo ignored Dr. Skrobot's consistent reports that Plaintiff's back pain and medication side effects prevented him from working.

ALJ Lombardo's reasons for not fully crediting Dr. Skrobot's medical opinion -- alleging it was not supported by objective medical evidence, and was inconsistent with the record -- are not supported by substantial evidence. As discussed above, Dr. Skrobot's opinion is supported by ample objective medical evidence, including an MRI, a CT scan, and an EMG. Likewise, Dr. Skrobot's analysis is consistent with the record as a whole. Not only does the record consist primarily of Dr. Skrobot's medical records documenting Plaintiff's back pain, but Dr. Skrobot's assessment is consistent with the findings of other examining sources in the record. In sum, ALJ Lombardo "impermissibly substitute[d] his own judgment for that of a physician." *McCain v. Dir., Office of Workers Comp. Programs*, 58 F. App'x 184, 193 (6th Cir. 2003). Therefore, Plaintiff's first statement of error is well taken.

### 6.    Reversal is Warranted

Having concluded that ALJ Lombardo erroneously failed to defer to Plaintiff's treater Skrobot's opinion regarding the severity of Plaintiff's condition, and particularly his assessment that Plaintiff could not lift more than ten pounds, the Court also finds it constitutes reversible error.  In Finding No. 10, based on the Vocational Expert's testimony, ALJ Lombardo identified 2,000 unskilled jobs at the light level of exertion and 10,000 additional unskilled jobs at the sedentary level of exertion that Plaintiff could perform, given his functional limitations, in the Dayton, Ohio regional economy. Tr. 30.  In making this finding, ALJ Lombardo used the Medication-Vocational Guidelines ("the Grid") as a frame of reference.  *Id.* Had ALJ Lombardo fully deferred to Dr. Skrobot's opinion, however, that Plaintiff could not lift more than ten pounds, Plaintiff would have been precluded from performing light work, as that requires lifting up to twenty pounds at a time and frequently lifting or carrying up to ten pounds at a time.  *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).  Thus, the Court finds it was reversible error to find that 2,000 light jobs were available to Plaintiff.

Further, although citing to a significant number of sedentary jobs available in the national economy, ALJ Lombardo failed to apply the Grid for sedentary work -- Table No. 1 , Appendix 2, Subpart P, Regulations No. 4 -- as a frame of reference.  Tr. 30.  That is problematic because Plaintiff was "closely approaching advanced age" at the time of ALJ Lombardo's decision.[5]  20 C.F.R. §§ 404.1563, 416.963.  Based on Plaintiff's vocational profile on December 17, 2005 -- "closely approaching advanced age," a high school education, and no past relevant work or transferable skills -- and using Table No.1 as a frame of reference, Plaintiff was considered

---

[5]Plaintiff turned fifty years old on December 17, 2005.

"disabled" in terms of sedentary work. *See* Vocational Rule 201.09 of Table No. 1, Appendix 2, Subpart P, Regulations No. 4. Thus, ALJ Lombardo deviated from the Grid in finding that 10,000 sedentary jobs were available to Plaintiff even after he reached the age of fifty. Further, the Vocational Expert did not testify as to whether the number of jobs differed based upon Plaintiff's age. *See* 882-87.

In sum, the Court finds that ALJ Lombardo erroneously determined that (1) Plaintiff was capable of performing light work after the alleged onset date, and (2) based on his vocational profile after turning fifty, Plaintiff was capable of performing sedentary work. Had ALJ Lombardo properly determined Plaintiff's RFC was for sedentary work with limitations, there would have been no jobs available to Plaintiff upon reaching the "closely approaching advanced age" classification, based on the Grid. Therefore, Plaintiff became disabled upon turning fifty years old.

### 7. ALJ's Reversible Error Only Applies to Plaintiff's SSI Claim

Finally, the Court must address the issue that Plaintiff only met the insured status requirement under the Social Security Act through June 30, 2005. Tr. 20. To receive DIB, Plaintiff must demonstrate that he had a disability that began on or before June 30, 2005. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Therefore, because Plaintiff turned fifty-years-old on December 17, 2005 -- after his date of last insured -- he is not entitled to DIB.

However, there is no corresponding requirement for SSI. *See* 42 U.S.C. § 1382c; *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 844 (6th Cir. 2004). Therefore, ALJ Lombardo only committed reversible error in denying Plaintiff's claim for SSI.

## B.    The Court Need Not Consider Plaintiff's Second Assignment of Error

In consideration of the Court's favorable decision on Plaintiff's first assignment of error, the Court need not consider his second assignment of error -- arguing that ALJ Lombardo's credibility assessment of Plaintiff's symptoms was erroneous.  Nonetheless, having carefully reviewed this claim and recognizing that an ALJ's credibility findings are entitled to considerable deference and should not be lightly discarded, *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993), the Court finds Plaintiff's second assignment of error unpersuasive.

## C.    Remand Is Warranted

When, as here, the non-disability determination is unsupported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing, or to reverse and order benefits granted.  The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Heath & Human Servs.*, 17 F.3d 171, 176 (6th Cir 1994).  However, the Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming.  *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985).

Such is the case here.  As recounted herein, proof of disability is great and remand will serve no purpose other than delay  Plaintiff's SSI claim, which was filed in October 2003, more than eight

years ago.  Tr. 792.  All substantial factual issues have been resolved, and the record reflects that Plaintiff became "disabled" upon turning fifty years old on December 17, 2005.  In light of the medical evidence, proof of disability is overwhelming.

## IV. RECOMMENDATION

For the foregoing reasons, Plaintiff's first assignment of error is well taken.  The Court finds that the ALJ's decision is not supported by substantial evidence, and recommends that it be reversed. The Court also recommends that this case be remanded for an immediate award of benefits as the record overwhelmingly establishes Plaintiff's entitlement to supplemental security income as of December 17, 2005.

**IT IS THEREFORE RECOMMENDED THAT:**

1.     The Commissioner's non-disability finding be found **UNSUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED;** and

2.     This case be **REMANDED FOR AN AWARD OF IMMEDIATE SUPPLEMENTAL SECURITY INCOME BENEFITS WITH AN ONSET DATE OF DECEMBER 17, 2005.**


December 7, 2011                            s/ **Michael J. Newman**
                                                 United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).